UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARLENE JOYCE LINNEY, | : | |
| Plaintiff | : | No. 3:11-CV-02243 |
| vs. | : | (Judge Kosik) |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | : : : : | FILED SCRANTON JUN 1 8 2013 |
| Defendant | : | PER _____ DEPUTY CLERK |

<u>MEMORANDUM</u>

**Background**

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Marlene Joyce Linney's claim for social security disability insurance benefits and supplemental security income benefits.

As will be detailed below, the present appeal relates to applications for benefits filed by Linney in 2009. However, Linney previously filed applications for disability insurance benefits and supplemental security income benefits in 2007. Tr. 80.[1] In that prior administrative proceeding, Linney claimed that she became disabled on October 21, 2006, because of both physical and mental impairments. Tr. 82-84. Those impairments included

---

1. References to "Tr.___" are to pages of the administrative record filed by the Defendant as part of the Answer on February 2, 2012.

bilateral chronic plantar fasciitis[2] and depression. Id. Linney's prior applications were denied by an administrative law judge on July 15, 2009. There is no indication in the present record that Linney appealed that decision administratively or to federal court.

The administrative law judge in the prior case made certain factual findings which are pertinent to the present appeal. Specifically, the administrative law judge found that Linney was born on June 14, 1961, and considered a "younger individual" under the regulations of the Social Security

---

2. "Plantar fasciitis . . . involves pain and inflammation of a thick band of tissue, called the plantar fascia, that runs across the bottom of [the] foot and connects [the] heel bone to your toes. Plantar fasciitis is one the most common causes of heel pain. Plantar fasciitis commonly causes stabbing pain that usually occurs with [the] very first step in the morning. Once your foot limbers up, the pain of plantar fasciitis normally decreases, but it may return after long periods of standing or after getting up from a seated position." Plantar fasciitis, Definition, Mayo clinic staff, http://www.mayoclinic.com/health/plantar-fasciitis/DS00508 (Last accessed June 12, 2013). Causes of plantar fasciitis are the overstreching or overuse of the plantar fascia, the thick band of tissue. Plantar fasciitis, A.D.A.M. Medical Encyclopedia, PubMed Health, U.S. National Library of Medicine, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0004438/ (Last accessed June 12, 2013). It "is commonly thought of as being caused by a heel spur, but research has found that this is not the case. On x-ray, heel spurs are seen in people with and without plantar fasciitis." Id.; see also Plantar Fasciitis and Bone Spurs, OrthoInfo, American Academy of Orthopaedic Surgeons, http://orthoinfo.aaos.org/topic.cfm?topic=a00149 (Last accessed June 12, 2013). Risk factors for plantar fasciitis include tighter calf muscles that make it difficult to flex the foot and bring the toes up toward the shin, obesity, a very high arch, repetitive impact activity and new or increased activity. Id.

Administration;[3] she had not engaged in substantial gainful activity since October 21, 2006, the alleged disability onset date;[4] she had the equivalent of a high school education; she was unable to perform her past relevant unskilled, medium work; and she had no transferable job skills because her past relevant work was unskilled. Tr. 82 and 90-91. The administrative law judge found that Linney had the residual functional capacity to perform a limited range of sedentary work and based on the testimony of vocational expert concluded that there were unskilled, sedentary jobs which Linney could perform and, consequently, was not disabled. Tr. 91-92. The administrative law judge in arriving at that decision noted that if Linney had the capacity to perform the full range of sedentary work (instead of a limited range) a finding of "not disabled" would be directed by Medical-Vocational Rule 201.18 which applies to "younger individuals" age 45-49 with limited education but able to communicate in English.[5]

---

3. The Social Security regulations state that "[t]he term younger individual is used to denote an individual 18 through 49." 20 C.F.R., Part 404, Subpart P, Appendix 2, § 201(h)(1). At the time of the administrative law judge's decision on those prior applications, Linney was 48 years of age.

4. The record reveals that Linney's last employment was as a housekeeper for a hotel in 2006 and briefly in 2007. Tr. 165 and 174. In 2007, Linney earned $90.63 as a housekeeper for Clarks Summit Hotel, LLC. Tr. 165.

5. Contained within the Social Security regulations are grids or tables which list Rules 201.01 through 201.29 (for sedentary work), 202.01 through 202.22 (for light work) and 203.01 through 203.31 (for medium work) in the left hand column. These grids or
(continued...)

3

On October 21 and November 5, 2009, Linney filed, respectively, a second set of applications for supplemental security income benefits and disability insurance benefits. Tr. 12, 93, 95 and 148-154. Linney alleged that she became disabled on July 12, 2009, because of several physical impairments (including plantar fasciitis) and depression. Tr. 173. On March 24, 2010, the Bureau of Disability Determination[6] denied Linney's applications. Tr. 103-108 and 115-120. On April 19, 2010, Linney requested a hearing before an administrative law judge. Tr. 129-131. After over 10 months had passed, a hearing was held on March 1, 2011, before a different administrative law judge. Tr. 27-58. At that administrative hearing, Linney amended her alleged disability onset date to July 16, 2009, which was the day after her prior applications were denied. Tr. 31.

---

5. (...continued)
tables are found at 20 C.F.R., Pt. 404, Subpt. P, App. 2. The Social Security regulations provide that "where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled." Rule 200.00. In the right hand column of the grid or table is set forth the "Decision" as to whether a claimant is "disabled" or "not disabled. To apply the grids to deny benefits, the individual must be able to perform the full-range of exertional demands of a particular category of work and have no non-exertional limitations.

6. The Bureau of Disability Determination is an agency of the state which initially evaluates applications for disability insurance benefits and supplemental security income benefits on behalf of the Social Security Administration. Tr. 104 and 116.

4

Also, at the time of the second administrative hearing, Linney was about 3 months shy of age 50. Under the Social Security regulations a person 50 to 54 years of age is considered a "person closely approaching advanced age." 20 C.F.R. §§ 404.1563(c) and 416.963(c). The Social Security Administration considers a claimant 50 to 54 who has a severe impairment and limited work experience as someone who may not be able to adjust to other work. Id. When a person is on the borderline of a higher age bracket (as in this case) the administrative law judge is to apply the age categories in a non-mechanical fashion and consider whether the higher age category should be applied. If Linney would have been so designated as well as limited to sedentary work and also found to have no transferable job skills, a high school education and unable to perform her prior relevant work, she would have been considered disabled.[7] See Medical-Vocational Rules 201.00(g) and 201.12, 20 C.F.R. Part 404, Subpart P, Appendix 2.

On May 18, 2011, the administrative law judge issued a decision denying Linney's second set of applications. Tr. 12-22. On July 22, 2011, Linney requested that the Appeals Council review the administrative law judge's decision and on September 30, 2011, the Appeals Council concluded that there was no basis upon which to grant Linney's request for review. Tr. 1-5, 7-8 and 220-222.

---

7. Such a finding would have required at least that the Social Security Administrative determine whether Linney met the financial eligibility requirements for an award of supplemental security income benefits.

5

Thus, the administrative law judge's decision stood as the final decision of the Commissioner.

Linney then filed a complaint in this court on December 2, 2011. Supporting and opposing briefs were submitted and the appeal[8] became ripe for disposition on June 18, 2012, when Linney elected not to file a reply brief.

Disability insurance benefits are paid to an individual if that individual is disabled[9] and "insured," that is, the

---

8. Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal." M.D.Pa. Local Rule 83.40.1.

9. To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

individual has worked long enough and paid social security taxes. The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured." It is undisputed that Linney met the insured status requirements of the Social Security Act through June 30, 2010. Tr. 12, 14, 80, 82, 154 and 156. In order to establish entitlement to disability insurance benefits Linney was required to establish that she suffered from a disability on or before that date. 42 U.S.C. § 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §404.131(a)(2008); see Matullo v. Bowen, 926 F.2d 240, 244 (3d Cir. 1990).

Supplemental security income is a federal income supplement program funded by general tax revenues (not social security taxes). It is designed to help aged, blind or other disabled individuals who have little or no income. Insured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits.

For the reasons set forth below we will remand the case to the Commissioner for further proceedings.

**STANDARD OF REVIEW AND SEQUENTIAL EVALUATION PROCESS**

Under 42 U.S.C. § 405(g) and relevant case law, the court is limited to reviewing the administrative record to determine whether the decision of the Commissioner is supported by substantial evidence. Counsel for the parties are familiar with

the five-step sequential evaluation process that the Commissioner

utilizes and the substantial evidence standard of review.[10]

---

10. Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. Brown, 845 F.2d at 1213. In an adequately developed factual record substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966).
    Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason, 994 F.2d at 1064. The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-707. Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).
    The Commissioner utilizes a five-step process in evaluating disability insurance benefits claims. See 20 C.F.R. §§ 404.1520 and 416.920; Poulos v. Commissioner of Social Security, 474 F.3d 88, 91-92 (3d Cir. 2007). This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity, (2) has an impairment that is severe or a combination of impairments that is severe, (3) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment, (4) has the residual functional capacity to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy. Id.

**DISCUSSION**

The administrative law judge at step one of the sequential evaluation process found that Linney had not engaged in substantial gainful work activity since July 16, 2009, the amended alleged onset date. Tr. 14.

At step two of the sequential evaluation process, the administrative law judge found that Linney had the following severe impairments: "plantar fasciitis, tarsal tunnel syndrome, degenerative joint disease, fibromyalgia, obesity and depression[.]" Id. However, inconsistently at a later point in the decision the administrative law judge stated that the depression was a non-severe impairment. Tr. 15. The administrative law judge further found that Linney's history of gastroesophageal reflux disease and a fracture of the fifth finger on the right hand were non-severe impairments. Id.

At step three of the sequential evaluation process the administrative law judge found that Linney's impairments did not individually or in combination meet or equal a listed impairment. Id.

At step four of the sequential evaluation process the administrative law judge found that Linney could not perform her prior relevant work which the administrative law judge stated included a semi-skilled, light work position as a fast food manager, but that Linney could perform a limited range of sedentary work. Tr. 15-20. In setting the residual functional

9

capacity at a limited range of sedentary work the administrative law judge relied on the evaluation of Barry Minora, M.D., a state agency medical consultant who examined Linney on March 4, 2010. Tr. 386-389. Dr. Minora in his report stated in relevant part as follows:

> As far as the patient's work-related physical activities . . . patient could probably lift or carry 5 to 10 pounds. As far as standing and walking, I believe that she could go for more than two hours, but less than six hours a day approximately 4 hours a day with a handheld assistive device required for balance if needed, although she did not require one today during this examination. As far as sitting, she could do eight hours alternating sitting and standing at her option. Pushing and pulling would probably be limited in the lower extremities secondary to plantar fasciitis. Postural activities, she occasionally [can] bend, kneel, stoop, crouch, balance, climb, or crawl. Other physical function, I saw no limitations. Environmental restrictions, she should probably [be] kept [a]way from heights, moving machinery or vibration, and temperature extremes, otherwise I saw no limitation.

Tr. 388. The residual functional capacity set by the administrative law judge is consistent with Dr. Minora's report.

At the administrative hearing a vocational expert testified that Linney had past relevant work as a housekeeper for a hotel and as a fast food worker which were both described as unskilled, light work; and as a fast food manager which was described as semi-skilled, light work. Tr. 52. The vocational expert also testified that Linney had acquired transferrable job skills from the fast food manager position such as clerical, administrative, customer service and cash-handling skills. Tr. 53.

Based on a residual functional capacity of a limited range of sedentary work and the testimony of the vocational expert the administrative law judge at step five of the sequential evaluation process found that Linney could perform semi-skilled, sedentary work as a general office clerk, order clerk and interview clerk,[11] and that there were a significant number of such jobs in the state economy. Tr. 21. With respect to transferability of job skills, the administrative law judge made inconsistent and vague statements in her decision. At one point

---

11. The administrative law judge in her decision used the Dictionary of Occupational Titles number 245.367-026 for both the general office clerk position and the order clerk position. Tr. 21. That number in fact is for a position entitled "Order-Control Clerk, Blood Bank(medical ser.; non-profit organ.)" and is described as follows:

> Receives and processes requests for blood from hospitals: Records amount and type of whole blood or blood component requested and checks inventory control board, or phones blood storage units, laboratories, doctors, or other hospitals to determine availability of whole blood and blood components. Questions hospital ordering blood as to urgency and use of blood. Advises supervisor or staff doctor when blood request is excessive, unusual, or for rare blood type or component, or when blood inventory is low. Relays orders to blood storage units to prepare and ship blood or components to designated hospitals. Adjusts figures on blood inventory control board and records transfer of blood from one hospital to another.

Dictionary of Occupational Titles, United States Department of Labor, http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT02C.HTM (Last accessed June 12, 2013).

11

the administrative law judge states that transferability is not material to the decision and then subsequently merely reiterates the testimony of the vocational expert without making an explicit finding that Linney had transferable job skills.

The administrative record in this case is 471 pages in length, primarily consisting of medical and vocational records. Linney argues, inter alia, that the administrative law judge erred by (1) failing to find that the prior administrative law judge's decision regarding Linney's past relevant work and transferability of job skills was res judicata, (2) failing to apply the age categories in a non-mechanical fashion and (3) failing to find Linney disabled under Medical-Vocational Rule 201.12. We find some merit in those arguments.

However, initially it should be stated that no treating physician, psychiatrist or psychologist has provided a functional assessment of Linney indicating that she is or was unable to perform the limited range of sedentary work set by the ALJ for the requisite continuous 12-month statutory period. The issues in this case primarily relate to whether Linney should have been automatically found disabled based on her borderline age category under the Medical-Vocational Rules, specifically Rule 201.12.

Generally the Commissioner is the one asserting res judicata in order to preclude a subsequent claim for benefits. The

Court of Appeals for the 5th Circuit has indicated that where a claimant files a new claim based on the same medical problems, with the same onset date, and alleging the same disability as the prior claim, a subsequent claim is barred even if additional medical evidence is submitted to support the impairment. Torres v. Shalala, 48 F.3d 887, 894 (5th Cir. 1995); see also Purter v. Heckler, 771 F.2d 682,690-691 (3d Cir. 1985)(the fact that the claimant submitted additional evidence was irrelevant).

However, social security claimants can also assert res judicata to bar relitigation of facts that were found in their favor in prior unfavorable decisions. Lively v. Secretary of Health and Human Services, 820 F.2d 1391, 1392 (4th Cir. 1987). In Lively, the claimant who was in the closely approaching advanced age category had been found capable of light work and denied benefits. About two weeks after that denial the claimant reapplied. The claimant had turned age 55 (which placed him in the advanced age category) after the unfavorable decision and asserted based on that decision that he should be considered disabled under the grid rules for someone who is limited to light work and of advanced age. The Commissioner denied him benefits based on a finding that the claimant could perform work at all exertional levels. The claimant sought review in federal court. The district court affirmed the Commissioner's decision. However,

the Court of Appeals for the 4th Circuit reversed and found that res judicata applied to bar the agency from redetermining the claimant's residual functional capacity.

The Lively case is analogous to the present one. The Commissioner is attempting to use additional evidence of Linney's prior relevant work to relitigate the decision by the prior ALJ that Linney's past relevant work was only unskilled, medium work, and that she had no transferable job skills.

The Commissioner argues that res judicata does not apply because at the second hearing there were new facts elicited. Specifically, the Commissioner refers to the testimony by Linney that she worked for a McDonald's fast food restaurant as a manager which according to the testimony of the vocational expert gave her transferable job skills. However, we are unable to conclude that the prior administrative law judge was not aware of the fact that Linney for a period of time worked as a fast food manager. All that is contained in the administrative record is the decision of the prior administrative law judge. The Commissioner did not include the transcript of the prior administrative hearing or any of the documents filed by Linney in that prior proceeding, including documents by Linney outlining her employment history which the vocational expert could have relied on in formulating an

opinion regarding the skill and exertional level of Linney's past relevant work.

Linney in the present appeal has argued that she only worked briefly as a fast food manager "but did not really have managerial duties." Furthermore, the argument of the Commissioner is inconsistent with and contrary to the decisions of the Court of Appeals for this Circuit and the 4th Circuit in Purter and Lively, respectively.

It can be argued that Lively was wrongly decided because a person's medical impairment and functional abilities can change over time. See Drummond v. Commissioner of Social Security, 126 F.3d 837 (6th Cir. 1997). A disability determination by an administrative law judge generally relates to a specific time period, that is, from the alleged onset date to the date of the administrative law judge's decision with the understanding that the claimant's condition will last for at least 12 months or result in death. However, a claimant's education and skill level does not change over time unless the claimant receives further education or on the job training. In this case, Linney's employment ceased in at least early 2007 and there is no indication that she received further schooling or job training that would have increased her skill level after the decision on her first set of applications. When the first administrative law

15

judge designated Linney's past relevant work as unskilled, medium he based that conclusion on the evidence before him. The second administrative law judge relied on additional evidence which conflicts with decision of the Courts of Appeals in Torres and Purter. In Torres the Commissioner was asserting res judicata and the decision indicates that a subsequent claim is barred even if additional evidence is submitted in support of a medical impairment. Consequently, when a claimant is asserting res judicata, the Commissioner should not be allowed to present or rely on additional evidence regarding a fact that previously was found in favor of a claimant.

Our review of the administrative record reveals that the decision of the Commissioner is not supported by substantial evidence. We will, therefore, pursuant to 42 U.S.C. § 405(g) vacate the decision of the Commissioner and remand the case for further proceedings. On remand the Commissioner should (1) clarify the issue of the seriousness of Linney's depression and transferability of job skills, (2) apply the age category in a

non-mechanical fashion, and (3) make a determination as to whether or not Linney is disabled under Medical-Vocational Rule 201.12.

An appropriate order will be entered.